FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

98 NOV 18 PM 1:53

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| ROMUALDO SUAREZ BERRIEL, } | |
| Plaintiff, } | |
| v. } | CASE NO. CV 96-AR-2561-E |
| JOE SAXMAN, } | |
| Defendant. } | |

ENTERED

NOV 18 1998

## MEMORANDUM OPINION

The plaintiff filed this action on September 26, 1996, alleging that he was deprived of his constitutional rights by defendant Joe Saxman, the Health Services Administrator at the Federal Correctional Institution at Talladega, Alabama ("FCI Talladega"). The plaintiff alleged that the defendant failed to adequately and appropriately treat his hernias and a "bump" on his head. After filing the action, the plaintiff was repatriated to Cuba. In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1)(B), the complaint was referred to a magistrate judge for a preliminary review and recommendation. On September 15, 1998, this court adopted and approved the magistrate judge's Report and Recommendation and issued an order dismissing the complaint with prejudice.

Now before the court is the plaintiff's belated response to the defendant's Special Report.[1] The response was due on October 27, 1997 but was filed on November 5, 1998. The plaintiff

---

[1] The court treated the Special Report as a motion for summary judgment under Rule 56 of the *Federal Rules of Civil Procedure*

states several reasons for his delay in responding to the Special Report. He claims that, after his repatriation to Cuba on March 20, 1997, he was imprisoned without access to his legal papers for 45 days. Although his filing is not entirely clear on this point, the plaintiff also seems to claim that he was imprisoned for three months because of some difficulty in finding his family. He also claims that it took him a year to get his legal papers because of Cuban censorship of mail from the United States and because it took time to forward mail from his prison address to his current address.

In the interest of fairness, the court will consider the plaintiff's latest filing as a Motion to Reconsider the court's adoption and approval of the magistrate judge's Report and Recommendation and the court's order dismissing the complaint with prejudice.[2] The law concerning motions for reconsideration has been summarized as follows:

> "'[a] motion for reconsideration must do two things. First, it must demonstrate some reason why the court should reconsider its prior decision. Second, it must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision.'" *Cover v. Wal-Mart Stores, Inc.*, 148 F.R.D. 294, 295 (M.D. Fla. 1993) (citations omitted). "The court will not reconsider a previous ruling when the party's motion fails to raise new issues and instead, only relitigates what has already been found lacking." *Int'l Ship Repair v. St. Paul Fire & Marine*, 922 F. Supp. 577, 579 (M.D. Fla. 1996) (citation omitted) "Courts have recognized three (3) grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and

---

[2] It is not clear whether the plaintiff has yet received the Report and Recommendation or the court's order dismissing the complaint. Even so, the court will treat the plaintiff's filing as a Motion to Reconsider the adoption and approval of the Report and Recommendation and the dismissal of the complaint. In so doing, the court will be able to evaluate any new arguments or evidence the plaintiff allegedly has been unable to present until now.

>   (3) the need to correct clear error or manifest injustice." *Id.*, (citing *Major v. Benton*, 647 F.2d 110, 112 (10th Cir. 1981)).

*Mitchell v. Crowell*, 975 F. Supp. 1440, 1442 (N.D. Ala. 1997).

The plaintiff's Motion to Reconsider fails because he has not "set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Mitchell*, 975 F. Supp. at 1442. In his motion, the plaintiff states that, "[on or about] Nomber 10, 1998" he received the hernia surgery he claims should have been provided to him during his stay at FCI Talladega. The court assumes the plaintiff means November 10, 1998, although that would mean the operation occurred five days after he filed the instant motion. The plaintiff claims that a Dr. Pedro Cabrera was to perform this surgery at a Cuban medical facility and that Dr. Cabrera judged the hernia to present a serious medical need. As the plaintiff claims that his hernia has not changed since his stay at FCI Talladega, he presents Dr. Cabrera's judgment as evidence that the defendant was "deliberately indifferent to a serious medical need" in violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

The plaintiff cannot prevail upon the basis of such evidence. As is set forth in the magistrate judge's Report and Recommendation, the medical staff at FCI Talladega and the consulting surgeon did not judge the plaintiff's hernia to be serious enough to require surgery. Even if Dr. Cabrera disagrees with this assessment, a disagreement between two doctors as to the course of treatment does not state a violation of the Eighth Amendment, since there may be several acceptable ways to treat a medical condition. *White v. Napoleon*, 897 F.2d 103, 110 (3rd Cir. 1990). Thus, even if the plaintiff's hernia is unchanged since his incarceration at FCI

3

Talladega, the mere fact that Dr. Cabrera thinks the hernia requires surgery does not support the plaintiff's Eighth Amendment claim against the defendant for failing to offer him the surgery.

The only other new argument tendered by the plaintiff is that the defendant tried to confuse the court by failing to properly differentiate his left inguinal hernia, which he claims required surgery, from his umbilical hernia, which did not trouble him significantly. The Report and Recommendation adopted by the court reflects that the magistrate judge was well aware that the plaintiff had two hernias. There is no indication that the magistrate judge was confused about the facts related to the plaintiff's hernias.

As the plaintiff has presented no facts or law which would induce the court to reverse its prior decision, the Motion to Reconsider is due to be denied. An appropriate order will be entered.

DONE this 18th day of November, 1998.

WILLIAM M. ACKER, JR.
United States District Judge

**United States Court of Appeals**
Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

Thomas K. Kahn
Clerk

In Replying Give Number
Of Case and Names of Parties

## NOTICE TO PRISONERS CONCERNING CIVIL APPEALS

The Prison Litigation Reform Act of 1995 (effective April 26, 1996) now **REQUIRES** that all prisoners pay the Court's $100 docket fee plus $5 filing fee (for a total of $105) when appealing any civil judgment.

If you wish to appeal in a civil case that Act now **requires** that upon filing a notice of appeal you *either*:

(1)   Pay the total $105 fee to the clerk of the district court from which this case arose; *or*

(2)   arrange to have a prison official certify to the district court from which the appeal arose the average monthly deposits and balances in your prison account for each of the six months preceding the filing of a notice of appeal.

If you proceed with option (2) above, the Act requires that the district court order you to pay an *initial partial fee* of at least 20% of the **greater** of either the average monthly deposits or of the average monthly balances shown in your prison account. The remainder of the total $105 fee will thereafter be deducted from your prison account each month that your account balance exceeds $10. Each such monthly deduction shall equal 20% of all deposits to your prison account during the previous month, until the total $105 fee is paid. (If your prison account statement shows that you cannot pay even the required *initial partial fee*, your appeal may nevertheless proceed, BUT THE TOTAL $105 FEE WILL BE ASSESSED AGAINST AND WILL BE DEDUCTED FROM FUTURE DEPOSITS TO YOUR PRISON ACCOUNT.)

Fees are not refundable, regardless of outcome, and deductions from your prison account will continue until the total $105 fee is collected, even if an appeal is unsuccessful.

THOMAS K. KAHN
Clerk

PLRA Notice